## CONTINUATION OF AN APPLICATION FOR A SEARCH WARRANT

I, Jim Feasel, being duly sworn, state as follows:

1. I make this continuation of an application for a search warrant for information associated with certain cellular telephones assigned call numbers as follows (collectively, the SUBJECT PHONES):

| Description | Call Number | Service Provider |
|---|---|---|
| SUBJECT PHONE 1 | (313) 346-7125 | Sprint PCS/T-Mobile |
| SUBJECT PHONE 2 | (419) 460-1392 | Sprint PCS/T-Mobile |
| SUBJECT PHONE 3 | (313) 346-2590 | Sprint PCS/T-Mobile |
| SUBJECT PHONE 4 | (248) 906-6999 | Sprint PCS/T-Mobile |
| SUBJECT PHONE 5 | (313) 378-7100 | Verizon Wireless |

The information regarding SUBJECT PHONES 1-4 is stored at premises controlled by Sprint PCS/T-Mobile, a wireless telephone service provider, at 4 Sylvan Way, Parsippany, NJ 07054. The information regarding SUBJECT PHONE 5 is stored at the premises controlled by Verizon Wireless, a wireless telephone service provider, at 180 Washington Valley Road, Bedminster, NJ 07921.

2. The information to be searched is described in the following paragraphs and in Attachment A. This continuation is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Sprint PCS/T-Mobile and Verizon Wireless to disclose to the government copies of the information further described in Attachment B.

3. I am a Special Agent with the Drug Enforcement Administration (DEA) currently assigned to the Grand Rapids District Office. I have been employed by the DEA since 2012. I am a federal law enforcement officer who is empowered to conduct investigations, execute warrants, and make arrests. During my tenure in the DEA, I have participated in over 50 investigations involving the violation of state and federal drug laws. Specifically, I have participated in many cases involving the distribution of controlled substances such as heroin, cocaine, methamphetamine and marijuana and search warrants. I have completed Special Agent training at the DEA Academy in Quantico, Virginia. I have been trained in the use of physical, electronic and human intelligence surveillance techniques, counter surveillance techniques, use of firearms, report and affidavit writing, execution of arrest and search warrants, court testimony and financial investigation techniques. I have testified in numerous state and Federal court proceedings and have been the affiant on multiple Federal warrants.

4. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of narcotics proceeds, and the dialect (lingo) and coded language used by drug traffickers. In connection with my duties, I investigate criminal violations of federal and state controlled substance laws, including but not limited to, conspiracy and attempt to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 846; possession with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1);

use of communication facilities to facilitate drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b); and offenses involving money laundering, conspiracy to do the same, and attempts to do the same, in violation of Title 18, United States Code, Section 1956.

5. The facts in this continuation come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This continuation is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this continuation, there is probable cause to believe that violations of 18 U.S.C. § 2118(d) (conspiracy to commit burglary involving controlled substances and 21 U.S.C. § 846 (conspiracy to distribute controlled substances) have been committed by Keonta ANTHONY, William ANTHONY, Dajohn DAVIS, Donald BEAUCHAMP and others. There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes as further described in Attachment B.

## PROBABLE CAUSE

*Attempted burglary of Westside Pharmacy*

7. On June 14, 2021, a GPS fixed to a Jeep Compass operated by Dajohn DAVIS showed that at approximately 9:45 PM, DAVIS went to DONALD BEAUCHAMP's home on Inkster Road, Redford, Michigan. He stayed there for approximately three minutes, then went back to his own home, arriving

approximately 10:10 PM. The tracker left there again five minutes later and went to White Castle, then KEONTA ANTHONY's home on Riverview Street in Redford, Michigan, at approximately 11:05 PM. At approximately 11:32 PM, he left KEONTA ANTHONY's home and drove west on I-96.

8. Investigators caught up to the Compass on I-94 during the early morning hours on June 15, 2021, and saw that it was driving westbound in tandem with a Jeep Cherokee registered to KEONTA ANTHONY (WILLIAM ANTHONY's brother).

9. The GPS indicated that the Jeep Compass arrived in the Kalamazoo area at approximately 2:00 AM, and drove past the Woodbridge Pharmacy, stopping in a nearby neighborhood. It left the area at approximately 2:16 AM.

10. The tracker indicated that the Jeep Compass past the Gull Pointe Pharmacy at approximately 3:00 AM and then parked in a housing complex immediately behind the pharmacy for several minutes. The tracker drove past the pharmacy again several more times before leaving the area.

11. At approximately 3:43 AM, the tracker approached the Westside Pharmacy and turned around. At approximately 4:05 AM, a member of the surveillance team observed both Jeeps pull into a Meijer gas station. At that time, the surveillance team observed three black males meet in the parking lot, in close proximity to the Jeep Compass. A few minutes later, one of the black males entered the Jeep Compass and both left at approximately 4:11 AM. After leaving the gas

station, the tracker went past the Westside Pharmacy four times, pausing in parking lots and a housing complex that have a direct line of sight to Westside Pharmacy.

12. At approximately 5:20 AM, the Compass parked in the Westside Pharmacy parking lot. Surveillance video from the Westside Pharmacy showed three masked men with crowbars pry open the exterior door to the pharmacy building. There were bars in the interior glass door to the pharmacy that the burglars were unable to break.

13. The burglars left the building at approximately 5:25 am and the tracker on the Jeep Compass left the parking lot around the same time.

14. At approximately 5:57 AM, Michigan State Police caught up to the Jeep Compass and the Jeep Cherokee travelling north on US-131. Troopers initiated a traffic stop of the Jeep Cherokee, and after a brief attempt to evade marked law enforcement units with activated lights and sirens, the vehicle pulled over to the side of the road. KEONTA ANTHONY was the driver and sole occupant of the Jeep Cherokee. Investigators subsequently searched the car and found no crowbars, no garbage bags, and no burglary tools. Investigators seized SUBJECT PHONE 2 from KEONTA ANTHONY's possession.

15. As the Jeep Cherokee stopped, the Jeep Compass sped away and marked units followed. At approximately 6:26 AM, the tracker showed that the Jeep Compass was going approximately 116 miles per hour on I-96. The Jeep Compass exited the highway onto M-100 (at approximately 115 miles per hour) and

eventually ran into a residence on Greenwood Street in Grand Ledge at approximately 6:35 AM.

16. Two witnesses drove past the Jeep Compass shortly before it crashed. Police passed them, then they saw a black man wearing all black with white "shoes" running away from the location of the crash. They reported this to police, who followed their directions and found DAJOHN DAVIS within minutes. DAVIS was wearing all black with white socks and no shoes. Davis had SUBJECT PHONE 5 on his person.

17. Police set up a perimeter around the area in Grand Ledge. At approximately 9:30 AM, witnesses reported that they saw two black men in a backyard near a dumpster. The two men then got into a white car that began to drive away but was stopped by police. DONALD BEAUCHAMP was in the backseat on the passenger side; WILLIAM ANTHONY was in the backseat on the driver's side. WILLIAM ANTHONY also initially identified himself to police as "Kewon Anderson."

18. DEA searched the Compass and found a yellow crowbar, a long green crowbar, a short green crowbar, several pairs of gloves, three face masks, a roll of garbage bags, and two sets of gym shoes that match those worn by two of the burglars. These items all appeared consistent with what the burglars wore and used in the Westside Pharmacy surveillance video. SUBJECT PHONE 4 (248-906-6999) was on the front floorboard.

*Indictment*

19.     On or about July 13, 2021, Keonta ANTHONY, William ANTHONY, Dajohn DAVIS, and Donald BEAUCHAMP were indicted in the Western District of Michigan for conspiring to distribute and possess with intent to distribute controlled substance, in violation of 21 U.S.C. § 846, and conspiring to commit burglary involving controlled substances, in violation of 18 U.S.C. § 2118(d) (1:21-cr-128).

20.     The indictment also alleges that Keonta ANTHONY, William ANTHONY, Dajohn DAVIS, and Donald BEAUCHAMP committed or attempted to commit thirteen pharmacy burglaries between June 2020 and June 2021 in furtherance of the conspiracies.

*Identification of SUBJECT PHONE 1*

21.     On February 2, 2021, investigators learned that KEONTA ANTHONY was in the Grand Rapids area at the Plaza Hotel located at 5700 28th Street SE, Grand Rapids, MI. A short time later, KEONTA ANTHONY, WILLIAM ANTHONY and another man walked out of the hotel. Investigators observed all three individuals enter a silver Jeep Cherokee registered to KEONTA ANTHONY and drive to a separate location in the parking lot where KEONTA ANTHONY got out of the Jeep and leaned into a blue Ford Explorer. All three individuals left in the Jeep Cherokee. The Kent County Sheriff's Department conducted a stop of the Jeep Cherokee for a traffic infraction. KEONTA ANTHONY agreed to return to the hotel and consented to a search of the blue Ford Explorer, which was later discovered to be stolen out of the Detroit area.

22. Investigators found and seized burglary tools in the vehicle, including two crow bars, angle grinders, bolt cutters, a baseball bat, a sledgehammer, a mask, and gloves. Multiple cellular telephones were also seized including SUBJECT PHONE 1 (313-346-7125), which KEONTA ANTHONY identified as his.

23. SUBJECT PHONE 1, was subscribed to Nuke Anthony, 1125 North Green Street, Detroit, MI 48209. Subsequent to the traffic stop of Keonta ANTHONY on February 2, 2021, investigators noted that after a period of approximately several weeks, Keonta began resuming communication activity using SUBJECT PHONE 1 which was ported to a different cellular device. T-Mobile records indicated that Keonta ANTHONY has continued to use SUBJECT PHONE 1 after the previously associated physical phone was seized by investigators on February 2, 2021. Investigators also seized a cell phone from WILLIAM ANTHONY.

*Identification of SUBJECT PHONE 2*

24. SUBJECT PHONE 2 was subscribed to a Deonte Anderson of 18671 Lennane, Redford, MI. A commercial database search of Deonte Anderson at that location yielded negative results. A commercial database search of that location yielded positive results as a historical address for Keonta ANTHONY.

25. A tolls analysis revealed that from May 10, 2021 to June 8, 2021, SUBJECT PHONE 2 communicated with SUBJECT PHONE 3 approximately 422 times, and from May 18, 2021 to May 31, 2021, SUBJECT PHONE 2 communicated with (313) 346-2828 utilized by William's mother, Takisha ANTHONY approximately 117 times. During the period of May 12, 2021, to June 6, 2021,

SUBJECT PHONE 2 communicated with SUBJECT PHONE 1 approximately 21 times.

26. As noted above, investigators seized SUBJECT PHONE 2 from KEONTA ANTHONY's possession on June 15, 2021.

*Identification of SUBJECT PHONE 3*

27. SUBJECT PHONE 3 was subscribed to Kewon Anderson (the name WILLIAM ANTHONY initially gave to police on June 15, 2021) at 8272 Northlawn Street, Detroit, MI and activated on February 3, 2021. A commercial database query of Kewon Anderson yielded negative results for any association with that address or anyone by that name in the State of Michigan. A commercial database search of WILLIAM ANTHONY associated him with 8272 Cloverlawn Street, Detroit, MI, the same street number and similar street name as the purported subscriber of SUBJECT PHONE 3.

28. A review of tolls showed that SUBJECT PHONE 3 was activated and began conducting communication activity on February 3, 2021, one day after the stop of Keonta and William ANTHONY on February 2, 2021.

29. A tolls analysis of (313) 346-3549 showed a substantial decrease in use after it was seized from WILLIAM ANTHONY on February 2, 2021.

30. A tolls analysis of several high frequency telephone numbers in contact with (313) 346-3549 revealed that on February 3, 2021, these same numbers began calling SUBJECT PHONE 3.

31. Between February 3, 2021 and May 3, 2021, Takisha Anthony (WILLIAM ANTHONY's mother) has been in contact with SUBJECT PHONE 3 approximately 550 times, and SUBJECT PHONE 1 (used by WILLLIAM ANTHONY's brother, KEONTA ANTHONY) has been in contact with SUBJECT PHONE 3 approximately 1300 times.

32. Investigators believe that William ANTHONY stopped using (313) 346-3549 after police seized it from his possession and began using SUBJECT PHONE 3.

*Identification of SUBJECT PHONE 4*

33. SUBJECT PHONE 4 was subscribed to Darnel Thomas of 16342 Fielding, Detroit, MI. A commercial database query of Darnel Thomas at 16342 Fielding, Detroit, MI yielded negative results.

34. A review of Dajohn DAVIS's Instagram profile showed that he was followed by a "Darnel Thomas" with an Instagram profile name "bandman1224." The profile picture for bandman1224 appears consistent with DONALD BEAUCHAMP. Furthermore, Donald BEAUCHAMP's date of birth is December 24, which match the numbers in the bandman1224 Instagram profile. Investigators believe that this Instagram account is used by DONALD BEAUCHAMP and that Darnel Thomas is an alias.

35. Investigators conducted a tolls analysis from March 7, 2021 to June 2, 2021, which revealed SUBJECT PHONE 4 was in communication with (313) ***-2571 approximately 139 times, and (313) ***-6516 one time. A commercial database

query of the subscribers of (313) ***-2571 and (313) ***-6516 indicate that both use the surname "Beauchamp" and have previously associated to the same address as DONALD BEAUCHAMP.

36. As noted above, investigators found SUBJECT PHONE 4 in the Jeep Compass that DONALD BEAUCHAMP fled after it crashed on June 15, 2021.

37. Investigators believe that Donald BEAUCHAMP was the user of SUBJECT PHONE 4.

*Identification of SUBJET PHONE 5*

38. SUBJECT PHONE 5 was subscribed to Precious Davis at 20560 Fenmore Street, Detroit, MI. The location is also the known residence of DAJOHN DAVIS.

39. SUBJECT PHONE 5 is associated with Cash App username "DayDaySlimeJohn." DAJOHN DAVIS uses a similar username on his Instagram: "slimejohn." Pictures posted on Instagram from that account match DAJOHN DAVIS.

40. On May 24, 2021, investigators obtained a search warrant for E911 Phase 2 information of SUBJECT PHONE 5. On June 14 and 15, 2021, and during the attempted burglary of the Westside Pharmacy, the E911 Phase 2 information indicated that the path of travel for SUBJECT PHONE 5 was similar to that of GPS information regarding the indicated path of travel for the Jeep Compass.

41. As noted above, investigators seized SUBJECT PHONE 5 from DAJOHN DAVIS' possession on June 15, 2021.

*Use of Subject Phones and Evidence to be Discovered*

42. Information disclosed by Sprint PCS/T-Mobile and Verizon Wireless, particularly historical cell-site location information and data, for the time period identified in Attachment B, is likely to constitute evidence of the crimes under investigation because it will reveal the location of the SUBJECT PHONES at a specific point in time, which will serve to corroborate or disprove statements made by witnesses, subjects, and targets of this investigation.

43. In my training and experience, I have learned that wireless service providers provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

44. Based on my training and experience, I know that wireless service providers collect and retrain cell-site data about their subscriber phones.

45. Based on my training and experience, I know that wireless service providers such typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.

46. In my training and experience, the requested information will constitute evidence of the crimes being investigated as it will assist in identifying the phones' users, their contacts, and their locations with respect to each other and the burglarized pharmacies.

47. I am requesting this information from March 31, 2020 to June 15, 2021.

## AUTHORIZATION REQUEST

48. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

49.  I further request that the Court direct Sprint PCS/T-Mobile and Verizon Wireless to disclose to the government any information described in Attachment B that is within its possession, custody, or control.